Filed 3/29/22

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MARCOS ELI FLORES,<br><br>    Defendant and Appellant. | F080584<br><br>(Super. Ct. No. F09901782)<br><br><br>**OPINION** |

---

APPEAL from a judgment of the Superior Court of Fresno County. Houry A. Sanderson, Judge.

Rex Adam Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

In 2010, petitioner Marcos Eli Flores pled no contest to the second degree murder of David Benjamin Smith. (Pen. Code,[1] § 187, subd. (a).) For this offense and the related enhancements, the trial court sentenced petitioner to an aggregate term of 36 years to life.

In 2019, petitioner filed a petition for resentencing pursuant to section 1170.95. The trial court denied the petition on the ground petitioner had not set out a prima facie claim for relief.

On appeal, petitioner asserts he established a prima facie claim for resentencing relief, and the court therefore erred in denying the petition without issuing an order to show cause or holding an evidentiary hearing. We agree with petitioner and we reverse.

## FACTUAL AND PROCEDURAL HISTORY

## I. Criminal Prosecution

On March 18, 2009, Smith was found deceased, lying face down with tire tracks across his back on the side of the road in rural Fresno County.[2]

On March 25, 2009, the Fresno County District Attorney filed a first amended complaint, charging petitioner and his codefendant Loy Allen Bowman with Smith's murder (§ 187, subd. (a)), with the special allegation that a principal was armed with a firearm (§ 12022, subd. (a)(1)).

### A. Preliminary Hearing

The court conducted a preliminary hearing on June 26, 2009. Two law enforcement officials testified at the hearing: Fresno County Sheriff Deputies S. Toscano

---

[1] Undesignated statutory references are to the Penal Code.

[2] Facts taken from the preliminary hearing transcript are provided for background purposes and to provide context for the parties' arguments. Except where expressly stated, we take no position on whether this testimony from the preliminary hearing is admissible to determine petitioner's eligibility for resentencing. (§ 1170.95, subd. (d)(3).)

and M. Eaton.  Eaton was the primary investigator on the murder and Toscano the secondary investigator.

### 1. Toscano's Testimony

Toscano attended Smith's autopsy, where the medical examiner concluded Smith had five gunshot wounds, one each in his left forearm, right forearm, left shin, right shin, and left chest area.  The doctor explained to Toscano that the trajectory of the arm and leg wounds indicated the bullets traveled from the lower part of the body to the upper part of the body, whereas the chest wound was from front to back.  Additionally, Toscano testified that Smith had skull fractures and brain contusions, his jaw and neck were broken, and all the ribs on his left side were fractured or broken.  Toscano and the doctor observed nine blunt injuries to Smith's head.  The doctor determined the blunt injuries were the cause of Smith's death, with the gunshot wounds as a secondary cause.

Toscano spoke with petitioner's stepfather, Richard.[3]  Richard reported to Toscano that petitioner had borrowed Richard's older model Ford "dually" truck at approximately 9:30 p.m. on March 17, 2009.  Richard next saw the truck the following morning at 3:30 a.m., when he noticed the door was ajar, the truck was dirty, a shawl and some towels were missing, and a pack of cigarettes was in the front seat.

Toscano also spoke with Bowman on the evening of March 18, 2009.  He later received a call from a woman named Pamela, who identified herself as a friend of Bowman's mother.  Pamela reported that she spoke with Bowman after Toscano's interview and Bowman seemed scared and nervous.  Bowman reportedly told Pamela he was involved in Smith's murder but was not the shooter, and he inquired about using sleeping pills to commit suicide.

---

[3] Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names or initials.  No disrespect is intended.

Toscano spoke with petitioner on March 21, 2009. Petitioner initially acknowledged borrowing Richard's truck, and reported that he went to Bowman's apartment, where he loaned the truck to Bowman and Smith. Bowman and Smith then went to the store for a long time. Eventually, Bowman returned and Smith did not. Bowman was panicking or scared, and was dirty with mud and blood.

Toscano told petitioner he did not believe petitioner was being truthful. Petitioner stated that he wanted to smoke a cigarette before he "snitched" on someone. Petitioner then told Toscano that he drove Bowman and Smith out into the county where "[t]here was an issue." Smith lost his cell phone and was upset and complaining. Petitioner pulled over to look for the phone. Bowman and Smith exited the truck first. As petitioner exited the truck, he saw Bowman with a .22-caliber rifle. Bowman shot Smith in the upper body and Smith fell to the ground. Bowman shot Smith another three to four times until the gun jammed. Bowman struck Smith several times with the rifle, as though it were a bat, at full force in the upper body and head. The rifle shattered in numerous pieces.[4] At some point during the incident, petitioner tried to grab the rifle and injured his left hand. Toscano was able to see a small cut or laceration on petitioner's left hand.

Petitioner told Toscano that he and Bowman then left. Toscano asked petitioner a "couple times" whether Smith had been run over. Petitioner responded that he "wanted to say no" but was not sure. Toscano continued to question petitioner on this point. Petitioner eventually acknowledged that he felt a bump but did not know whether it was Smith. He stated he did not know if Smith was under the tire, and that he was scared and just "took off." After a break, Toscano questioned petitioner again on this point, and petitioner explained that he thought there was an issue with the truck's transmission, and he may have run over Smith twice – first while going in reverse and then again while driving forward. Petitioner told Toscano that if he did run over Smith, he did it

---

[4] Toscano testified that pieces of the rifle were found at the crime scene.

4.

accidentally. Petitioner told Toscano that he and Bowman left the scene, and petitioner then dropped Bowman off at his apartment and went home.

ii. *Eaton's Testimony*

Eaton was dispatched to the crime scene on the morning of March 18, 2009, where he encountered Smith's body face down in the dirt on the east shoulder of the roadway, approximately 10 feet from the road. Debris from what appeared to be a .22-caliber long rifle was located around the body in multiple pieces, however the barrel was intact. Eaton also found Smith's wallet and checkbook, .22-caliber shell casings, a folding knife, a pen, and pieces of a cell phone.

Eaton observed three sets of shoe tracks, one of which belonged to Smith. One of the other sets of tracks was in close proximity to the body and clearly involved in the "disturbance." The other set of tracks appeared to have exited from the passenger side of a vehicle and was "a little bit further [away]" from the disturbance, to the north and east. Eaton also observed tire tracks, which appeared to be from dual tires on the real axle of a vehicle. The tracks were parallel to the roadway, and it appeared the vehicle initially reversed over the body in a southbound direction and traveled for approximately 40 feet, before going north and east back over the body. Eaton estimated the body was approximately five feet behind the truck on the passenger side before the truck started moving.

Eaton went to petitioner's residence on March 19, 2009, and observed a Ford pick-up truck with twin hubs on the rear axle parked on the curb in front of the residence. The tires on the truck appeared to have the same tread pattern that Eaton observed at the crime scene.

Eaton was present for Toscano's interview with petitioner on March 21, 2009. He also interviewed petitioner on March 24, 2009, and petitioner's statement on that date was similar to the one he gave on March 21, 2009. However, in the March 24, 2009, interview, petitioner was certain he ran over Smith. Petitioner told Eaton that he had

5.

driven the truck to the scene, where the engine was left running. After Smith was assaulted, petitioner got in the driver's side of the vehicle and he either put the vehicle in reverse or it slipped into reverse. He drove the vehicle as it backed over Smith, and then drove forward, driving over Smith again before driving away from the scene. Petitioner also told Eaton that he and Bowman had planned to confront Smith over drugs and money, and the plan involved a physical confrontation. According to Eaton, petitioner admitted "that he struck both Mr. Bowman and Mr. Smith" to try to get them to fight or confront each other over their issues. Petitioner later recanted that statement. Petitioner gave several different accounts of the shoes and clothes he was wearing on the night of the murder. Petitioner also reported that he drove alone to a car wash and washed the truck after leaving the scene.

Eaton also interviewed Bowman on three separate occasions. The first occasion was on the evening of March 18, 2009, at Bowman's apartment. Bowman was contacted because he was Smith's roommate. Bowman told Eaton he had not been aware Smith was deceased. He reported that he had spoken with Smith at approximately 4:00 p.m. the day before. He also "talked briefly" about a blue truck that was at "someone named Marcos's house," but Bowman could not take Eaton there because he had only been there once and did not know Marcos.

Eaton spoke with Bowman again on March 21, 2009, subsequent to Bowman's arrest. On that date, Bowman reported that he and petitioner were together on March 17, 2009, when petitioner borrowed the blue truck and drove Bowman home. There, they asked Smith to go with them to a friend's house. Smith agreed and, when they left, petitioner drove, Bowman was the front passenger, and Smith was the rear passenger. During the drive, an argument started between Smith and petitioner regarding a cell phone. Petitioner pulled over to try to find the cell phone. Petitioner stepped out on the driver's side and Smith stepped out on the passenger side. Petitioner and Smith were arguing, and Bowman was surprised when petitioner pulled out a .22-caliber rifle and

6.

pointed it at Smith. Smith asked, "Why[?]" and petitioner shot him. Smith fell and petitioner shot him three to four more times. Petitioner then struck Smith about the head and upper body approximately 25 times, wielding the gun from the barrel like a baseball bat. The gun broke into pieces and petitioner and Bowman got into the truck. Petitioner drove over Smith and they left the scene.

Bowman gave another statement on March 22, 2009. On that date, Bowman reported that "there was a plan, but it wasn't his plan." Bowman understood the plan to involve confronting Smith because he was selling drugs and not doing it correctly. Bowman explained that Smith had sold petitioner "some bad dope, and they had issues over money." Bowman and petitioner were going to confront Smith over these issues. Bowman anticipated an "assaultive type of confrontation," but not a murder. Bowman also explained that the rifle used in the murder was his and he brought it in the truck at petitioner's request but it was not loaded. Bowman did not see petitioner load the gun. After the incident, Bowman helped petitioner wash the truck at the car wash.

Eaton recovered a pair of shoes from petitioner's residence, which had tread similar to the footprints found at the scene, but Eaton had not made a conclusive determination that they were the same.

Bowman consistently denied being the shooter.

B.     Plea

On August 11, 2009, the Fresno County District Attorney filed a first amended information, charging petitioner with Smith's murder (§ 187, subd. (a)), with the allegation that a principal was armed with a firearm (§ 12022, subd. (a)(1)). The information also alleged petitioner suffered a prior serious felony conviction that also constituted a strike. (§§ 667, subds. (a)(1), (b)-(i), 1170.12, subds. (a)-(d).)

On November 1, 2010, petitioner entered a plea of no contest, pursuant to *People v. West* (1970) 3 Cal.3d 595, to second degree murder and admitted all enhancements and special allegations. The parties stipulated that the police reports and preliminary hearing

transcripts provided a factual basis for the plea. On January 10, 2012, the court sentenced petitioner to a term of 30 years to life for the murder, plus five years for the prior serious felony conviction and one year for the vicarious arming enhancement.

## C. Resentencing Petition

On February 25, 2019, petitioner, in propria persona, filed a petition for resentencing pursuant to section 1170.95. In the form petition, petitioner stated that a complaint, information, or indictment was filed against him that allowed him to be prosecuted under a theory of felony murder or murder under the natural and probable consequences doctrine; he pled guilty or no contest to first or second degree murder in lieu of going to trial; and he could not now be convicted of first or second degree murder because of changes made to sections 188 and 189, effective January 1, 2019. He further requested that counsel be appointed to represent him during the resentencing process.

On April 24, 2019, the People filed a motion to dismiss the petition on the ground section 1170.95 is unconstitutional. Therein, the People provided a factual summary of the case taken from this court's nonpublished opinion in Bowman's direct appeal, *People v. Bowman* (Oct. 22, 2013, F063858) (*Bowman*).[5] On the same date, the People filed a motion to dismiss the petition on the ground petitioner was ineligible for resentencing because he was the actual killer. In support, the People relied on our factual summary in Bowman's appeal, wherein we stated petitioner testified at Bowman's trial that he ran over Smith and the medical examiner testified that blunt force injuries were the cause of death. The People further argued petitioner waived his appeal rights when entering his plea and this waiver barred his petition for resentencing. The People asked the court to "deny and dismiss [the] petition."

---

[5] Petitioner testified against Bowman at Bowman's trial. A jury convicted Bowman of second degree murder and found true the allegation that a principal was armed with a firearm. The jury found not true the allegation that Bowman personally and intentionally discharged a firearm resulting in death. (*Bowman*, *supra*, F063858.)

Counsel was appointed to represent petitioner. On June 24, 2019, petitioner filed an opposition to the petition, stating that the People's statement of the case "is a fair representation of the facts of the case and the procedural events of this case," but opposing the People's argument that section 1170.95 is unconstitutional. Petitioner did not respond to the People's arguments regarding the merits of his petition.

On November 19, 2019, the court held a hearing on the petition. The court stated it had reviewed the parties' briefs and the court file, but had not reviewed the opinion in Bowman's direct appeal. The court stated that petitioner did not qualify for resentencing because "he would have to prepare and petition the court with a prima facie case that he is entitled to relief, and the [c]ourt finds that he has failed to make that case other than just print out and fill out a form." Accordingly, the court concluded petitioner was not entitled to relief, and therefore granted the People's motion to dismiss and also stated it was denying the petition on the merits.

This timely appeal followed.

## **DISCUSSION**

### I.     **Applicable Law**

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017-2018 Reg. Sess.) "to amend the felony murder rule and the natural and probable consequences doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The bill accomplished this task by adding three separate provisions to the Penal Code. (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).) First, to amend the natural and probable consequences doctrine, the bill added section 188, subdivision (a)(3), which requires a principal to act with malice aforethought before he or she may be convicted of murder. (§ 188, subd. (a)(3); accord, *Gentile*, at pp. 842-

9.

843.) Second, to amend the felony-murder rule, the bill added section 189, subdivision (e):

> "A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."[6] (§ 189, subd. (e); accord, *Gentile*, at p. 842.)

Finally, the bill added section 1170.95 to provide a procedure for those convicted of a qualifying offense "to seek relief under the two ameliorative provisions above." (*Gentile*, at p. 843.) This procedure is available to persons convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter." (§ 1170.95, subd. (a).)

"Section 1170.95 lays out a process" for a person convicted of one of the aforementioned offenses "to seek vacatur of his or her conviction and resentencing." (*Gentile*, *supra*, 10 Cal.5th at p. 853.) First, an offender must file a petition in the sentencing court averring that:

> "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine[;]

---

[6] Additionally, section 189 was amended to allow for felony-murder liability where the victim is a peace officer. (§ 189, subd. (f); accord, *People v. Daniel* (2020) 57 Cal.App.5th 666, 672.)

10.

"(2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder[; and]

"(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(1)-(3); see § 1170.95, subd. (b)(1)(A); accord, *People v. Lewis* (2021) 11 Cal.5th 952, 959-960 (*Lewis*).)

Additionally, the petition shall state "[w]hether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1)(C).)

If a petition fails to contain the required information and the information cannot be "readily ascertained" by the court, the petition may be denied without prejudice to the filing of another petition. (§ 1170.95, subd. (b)(2).) Otherwise, counsel must be appointed, if requested. (§ 1170.95, subd. (b)(3).) The prosecutor must file a response and the petitioner may file a reply. The trial court must then hold a hearing to determine if the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1170.95, subd. (c); accord, *Lewis*, *supra*, 11 Cal.5th at pp. 961-963, 967.) In making this determination, the court may rely on the record of conviction. (*Lewis*, at pp. 970-971.) However, the prima facie inquiry is limited and, at this stage of the proceedings, the court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id*. at p. 972.)

If the court determines the petitioner has met his or her prima facie burden, "the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder[, attempted murder, or manslaughter] conviction and to resentence the petitioner on any remaining counts." (*Gentile*, *supra*, 10 Cal.5th at p. 853; accord, § 1170.95, subds. (c), (d)(1).) At the hearing, the prosecution must "prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).) The prosecutor and the petitioner may offer new or additional evidence to meet their respective burdens. The admission of evidence at the hearing is governed by

11.

the Evidence Code.  However, the court also "may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed," as well as the "procedural history of the case recited in any prior appellate opinion."  (§ 1170.95, subd. (d)(3).) Hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of section 872 is inadmissible at the evidentiary hearing, unless made admissible by another exception to the hearsay rule.  (§ 1170.95, subd. (d)(3).)

To demonstrate prejudice from the denial of a section 1170.95 petition before the issuance of an order to show cause, the petitioner must show it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing.  (*Lewis*, *supra*, 11 Cal.5th at pp. 972-974; see *People v. Watson* (1956) 46 Cal.2d 818, 836.)

## II.    The Trial Court's Reasoning was Erroneous

The trial court determined petitioner failed to make a prima facie case for resentencing because he had done nothing more than "print out and fill out a form." Although the court stated it had reviewed the court's file regarding the case, it does not appear the court relied on the file in resolving the petition.  To the extent the court determined petitioner's initial showing was inadequate, the court erred.

Section 1170.95, subdivision (a) requires a petitioner seeking resentencing to file a petition averring, as relevant here, that the charging instrument permitted him to be prosecuted under a theory of felony murder or murder under the natural and probable consequences doctrine, that he accepted a plea in lieu of going to trial on those charges, and that he could not presently be convicted of murder or attempted murder because of changes to section 188 or 189 made effective January 1, 2019.  (§ 1170.95, subd. (a)(1)-(3); accord, *Lewis*, *supra*, 11 Cal.5th at pp. 959-960.)  If the petition meets these requirements, the court must determine whether petitioner has set forth a prima facie case.  (§ 1170.95, subd. (c).)

The prima facie inquiry is limited. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) " ' "[T]he court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid.*)

The record does not reflect the court conducted such an inquiry. Rather, the court denied the petition on the ground petitioner failed to make an unspecified showing beyond the factual allegations contained in the petition. The petition, however, was adequate under section 1170.95, subdivisions (a) and (b). Accordingly, the court was required to make a preliminary assessment of petitioner's eligibility by determining whether the record of conviction conclusively refuted petitioner's allegations. In failing to do so, the court erred. (See § 1170.95, subd. (c).)

## III.     Petitioner Established a Prima Facie Claim for Resentencing

The People argue petitioner nonetheless is ineligible for resentencing because the opinion in Bowman's appeal and the preliminary hearing transcript establish he was the actual killer. We disagree.

At the prima facie stage, the court may deny a petition if the petitioner is ineligible for resentencing as a matter of law. (*Lewis*, *supra*, 11 Cal.5th at p. 966.) In the plea context, a petitioner convicted of murder is ineligible for resentencing if the record establishes, as a matter of law, that (1) the complaint, information, or indictment did not allow the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine, or another theory of imputed malice; (2) the petitioner was not convicted under such theory; or (3) the petitioner could presently be

13.

convicted of murder or attempted murder under the law as amended by Senate Bill No. 1437 (2017-2018 Reg. Sess.).  (See § 1170.95, subd. (a)(1)-(3).)

Here, petitioner pled no contest to second degree murder.  (*People v. Rivera* (2021) 62 Cal.App.5th 217, 232 (*Rivera*) [a conviction of second degree murder does not categorically bar a petition under § 1170.95].)  Furthermore, the first amended information charged petitioner generically with murder, and did not specify or exclude any particular theory of murder.  (*Rivera*, at p. 233 [generically charging murder did not preclude prosecution based on any particular theory of murder]; see *People v. Eynon* (2021) 68 Cal.App.5th 967, 977-978 [same].)  In entering his plea, petitioner did not admit to or stipulate to any particular theory of murder.  Neither the charge nor the plea excludes petitioner from resentencing eligibility as a matter of law.

However, the People rely on our decision in Bowman's appeal and the transcript from petitioner's preliminary hearing to argue the record of conviction establishes as a matter of law that petitioner was the actual killer and thus could be convicted of murder under the law as amended by Senate Bill No. 1437 (2017-2018 Reg. Sess.).[7]  In determining whether a petitioner has stated a prima facie case, the court may consider the record of conviction.  (*Lewis*, *supra*, 11 Cal.5th at p. 970.)  However, our opinion in Bowman's appeal is not part of the record of conviction in petitioner's case.  Furthermore, the factual summary in an appellate opinion is not evidence that may be considered at an evidentiary hearing to determine a petitioner's eligibility for resentencing.  (§ 1170.95, subd. (d)(3) ["The court may also consider *the procedural history* of the case recited in any prior appellate opinion."].)  If such evidence may not be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for

---

[7] In *Bowman*, we summarized petitioner's testimony in relevant part as follows:  "[Petitioner] backed up the truck and realized he drove over Smith's body.  [Petitioner] stopped, and then he drove forward and again ran over Smith's body.  This was not part of the plan, but [petitioner] admitted he was still angry."  (*Bowman*, *supra*, F063858.)

14.

resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing at the prima facie stage.[8]

We likewise conclude the preliminary hearing transcript does not establish petitioner is ineligible for resentencing as a matter of law. Significantly, section 1170.95 recently was amended to exclude from the court's consideration "hearsay evidence that was admitted at a preliminary hearing pursuant to subdivision (b) of Section 872 . . . unless the evidence is admissible pursuant to another exception to the hearsay rule."[9] (§ 1170.95, subd. (d)(3).) Prior to this amendment to section 1170.95, the People's argument relied on the officers' testimony at the preliminary hearing that (1) petitioner admitted driving over Smith twice, (2) the medical examiner identified blunt force injuries as the cause of Smith's death, (3) Bowman claimed petitioner shot and beat Smith with the rifle, and (4) the medical examiner also identified gunshot wounds as a cause of death. Since the amendment to section 1170.95, the People have narrowed their argument to rely solely on Toscano's testimony that petitioner admitted driving over Smith twice.[10] We therefore consider only whether Toscano's testimony in this regard

---

[8] On the other hand, petitioner's testimony at Bowman's trial would be admissible at an evidentiary hearing, unless otherwise excluded by the Evidence Code. (§ 1170.95, subd. (d)(3).)

[9] Again, this subdivision governs the admission of evidence at an evidentiary hearing following the issuance of an order to show cause. (§ 1170.95, subd. (d)(3).) As stated above, we fail to see how evidence that cannot establish a petitioner's ultimate eligibility for resentencing could establish a petitioner's ineligibility for resentencing at the prima facie stage.

[10] Petitioner does not dispute the People's assertion that petitioner's statements to Toscano are admissible pursuant to Evidence Code section 1220 as a party admission. As we do not consider the remaining testimony, we do not decide the extent to which it may be admissible under section 1170.95, subdivision (d)(3).

15.

establishes, as a matter of law, that petitioner is ineligible for resentencing. For reasons we explain, we conclude it does not.[11]

Courts of Appeal are split on the import of the preliminary hearing transcript in determining whether a petitioner has made a prima facie case for resentencing under section 1170.95. In *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1166 (*Nguyen*), the court found the preliminary hearing transcript dispositive. There, Nguyen pled guilty to second degree murder and stipulated to the preliminary hearing transcript and police reports as the factual basis for the plea. (*Id.* at p. 1161.) Nguyen subsequently petitioned for resentencing pursuant to section 1170.95. The People opposed the petition on the ground " '[s]ufficient evidence presented at the preliminary hearing' " demonstrated Nguyen acted with malice aforethought as an aider and abettor to the murder. The People further argued that they had not argued the applicability of the natural and probable consequences doctrine and the record did not support a finding the court considered that theory in holding Nguyen to answer. (*Nguyen*, at p. 1161.) The trial court agreed with the People's arguments and denied the petition. (*Id.* at p. 1163.) The Court of Appeal affirmed, noting:

> "If [the petitioner] had gone to trial, and the parties had presented no argument and the trial court had given no instructions regarding felony murder or murder under a natural and probable consequences theory, there is no question [the petitioner] would be unable to make a prima facie showing that he is entitled to relief under section 1170.95. [Citation.] Nguyen's murder conviction after a guilty plea should not be accorded less weight and finality than a murder conviction after a jury trial, as the transcripts from the preliminary and plea hearings demonstrate Nguyen was convicted of second degree murder as a direct aider and abettor." (*Id.* at p. 1167.)

---

[11] Petitioner also argues the preliminary hearing transcript cannot be considered because it is not part of the record of conviction. We reject this contention. (*People v. Davenport* (2021) 71 Cal.App.5th 476, 481.)

In *Rivera*, the court declined to follow *Nguyen*. (*Rivera*, *supra*, 62 Cal.App.5th at p. 236.) Rivera pled no contest to second degree murder and stipulated to a grand jury transcript as the factual basis of the plea. (*Id.* at pp. 225-226.) He subsequently filed a petition for resentencing pursuant to section 1170.95. The People argued Rivera failed to make a prima facie showing of eligibility because the record, including the transcript of the grand jury proceedings, established the People had proceeded on a single theory of liability that Rivera possessed malice aforethought jointly with a fellow gang member involved in the shooting. (*Rivera*, at p. 226.) The trial court declined to take judicial notice of the grand jury transcript, but nonetheless denied the petition on the ground Rivera's plea to " 'second degree murder with malice' " excluded him from resentencing eligibility. (*Id.* at pp. 226-227.) The Court of Appeal rejected this reasoning and then considered the People's alternative argument that Rivera nonetheless was ineligible for resentencing based on the grand jury transcript. (*Id.* at pp. 231-235.)

The court determined the transcript was not dispositive, noting:

"[T]here is no basis on which to infer that Rivera admitted to acting with actual malice. His stipulation to the grand jury transcript as the factual basis for his plea does not establish such an admission. Under section 1192.5, a trial court taking a plea must make 'an inquiry . . . of the defendant to satisfy itself . . . that there is a factual basis for the plea.' 'The factual basis required by section 1192.5 does not require more than establishing a prima facie factual basis for the charges. [Citation.] It is not necessary for the trial court to interrogate the defendant about possible defenses to the charged crime [citation], nor does the trial court have to be convinced of [the] defendant's guilt.' [Citation.] In addition, '[a] defendant is not required to personally admit the truth of the factual basis of the plea, which may be established by defense counsel's stipulation to a particular document.' [Citation.] Thus, absent an indication that a defendant admitted the truth of particular facts, the stipulation to a factual basis for the plea does not 'constitute[] a binding admission for all purposes.' [Citations.] For our purposes, this means that Rivera did not admit to the truth of any of the evidence presented to the grand jury, and that evidence therefore cannot be used to demonstrate that he admitted to acting with actual malice. Thus, the trial court properly declined to rely on

this evidence in making its ruling." (*Rivera*, *supra*, 62 Cal.App.5th at p. 235.)

In specifically declining to follow *Nguyen*, the court noted, "The fact that a petitioner was not 'convicted of felony murder or murder under a natural and probable consequences theory' [citation] at trial may be conclusively determined if, for example, the jury did not receive instructions on either theory." (*Rivera*, *supra*, 62 Cal.App.5th at p. 236.) However, the record of conviction involving a plea "will generally lack any comparable assurance of the basis for the conviction." (*Id.* at p. 237.) This is because a magistrate or grand jury is not required to be convinced beyond a reasonable doubt that the defendant committed every element of the offense, but rather " ' " 'must be convinced only of such a state of facts as would lead a [person] of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused. [Citations.] In other words, "Evidence that will justify a prosecution need not be sufficient to support a conviction." ' " ' " (*Ibid.*) Furthermore, the instructions to a grand jury "do not fix the theories on which a case may be prosecuted or establish the basis for a postindictment plea. A prosecutor has 'no duty to instruct the grand jury sua sponte on lesser included offenses' because 'it "is not the province of the [g]rand [j]ury to determine the degree of murder." ' . . . Thus, a grand jury's return of an indictment after being instructed on only certain theories of murder does not reflect a determination that those are the only viable theories available, much less that murder has been proven under them beyond a reasonable doubt." (*Ibid.*) Finally, the court noted Rivera had filed a facially sufficient petition and offered a theory under which the evidence presented to the grand jury was consistent with his guilt of murder under a natural and probable consequences theory, thereby creating a factual dispute that could not be resolved at the prima facie stage. (*Id.* at p. 239.)

Since *Nguyen* and *Rivera* were decided, our Supreme Court has emphasized that the prima facie review is limited, and "the 'prima facie bar was intentionally and

correctly set very low.' " (*Lewis*, *supra*, 11 Cal.5th at p. 972.)  Furthermore, at the prima facie stage, the court is prohibited from engaging in " 'factfinding involving the weighing of the evidence or the exercise of discretion.' " (*Ibid*.)  Instead, the court must " ' "take[] [the] petitioner's factual allegations as true" ' " and make a " ' "preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Id.* at p. 971.)  Only where the record of conviction contains facts *conclusively* refuting the allegations in the petition may the court make credibility determinations adverse to the petitioner.  (*Ibid.*; accord, *People v. Duchine* (2021) 60 Cal.App.5th 798, 815; *People v. Drayton* (2020) 47 Cal.App.5th 965, 968, abrogated on another ground by *Lewis*, at pp. 962-963.)  Additionally, it is now well-settled that the prima facie determination is a question of law.  (*Lewis*, at p. 966.)  To the extent *Nguyen* suggests a section 1170.95 petition may be denied based on sufficient or substantial evidence to support a conclusion the petitioner was convicted under a valid theory, it is contrary to *Lewis*.  (*Nguyen*, *supra*, 53 Cal.App.5th at pp. 1167-1168; see *Lewis*, at p. 966.)  Accordingly, like the court in *Rivera*, we decline to follow *Nguyen.*  (*Rivera*, *supra*, 62 Cal.App.5th at p. 236.)

We conclude the portion of the preliminary hearing transcript relied on by the People does not establish petitioner's ineligibility for resentencing as a matter of law.  According to Toscano, petitioner stated that Bowman shot Smith multiple times and beat him around the head and upper body, after which petitioner may have accidentally run over Smith twice while leaving the scene.  Petitioner did not admit the truth of this testimony and his stipulation that the transcript provided a factual basis for the plea is not a " 'binding admission for all purposes.' " (*Rivera*, *supra*, 62 Cal.App.5th at p. 235.)  Even if it was, this testimony, standing alone, does not conclusively establish as a matter of law that petitioner was the actual killer, acted with intent to kill or actual malice, or was a major participant in an underlying crime who acted with reckless indifference to human life.  It does not exclude the possibility that petitioner was, or could have been,

19.

convicted under the imputed malice theories eliminated by Senate Bill No. 1437 (2017-2018 Reg. Sess.). To find petitioner ineligible for resentencing on this record would require judicial factfinding, which is impermissible at the prima facie stage. (*Lewis*, *supra*, 11 Cal.5th at pp. 971-972.)

In sum, petitioner adequately alleged a prima facie claim for relief and the record does not rebut his allegations as a matter of law. The court was required to issue an order to show cause (§ 1170.95, subd. (c)), and to hold a hearing at which the prosecution bears the burden of proving petitioner's ineligibility for resentencing beyond a reasonable doubt, unless such hearing is waived (§ 1170.95, subd. (d)). In failing to do so, the court erred. Accordingly, we must reverse and remand for further proceedings. We express no opinion on the merits of the petition.

## DISPOSITION

The November 19, 2019 order denying petitioner's section 1170.95 petition is reversed. On remand, the trial court is directed to issue an order to show cause and to conduct further proceedings as required under section 1170.95, subdivision (d), in light of the principles set forth herein.

DETJEN, J.

WE CONCUR:


HILL, P. J.


LEVY, J.

20.